ABRAHAM et al., Appellants,

v.

BP EXPLORATION & OIL, INC., Appellee.

[Cite as *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 2002-Ohio-4392.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–1061.

Decided Aug. 27, 2002.

472

Abraham Law Offices and Rick J. Abraham; Crabbe, Brown, Jones, Potts & Schmidt and James D. Gilbert, for appellants.

Vorys, Sater, Seymour & Pease, L.L.P., and David W. Hardymon, for appellee.

---

PETREE, Judge.

{¶ 1}   This action is the result of the environmental contamination of a piece of real property currently owned by the plaintiffs, Dolores J. and William J. Abraham, Dexter R. Yager Sr., and Y & A Realty Co. ("plaintiffs"), and previously leased in part by defendant BP Exploration & Oil, Inc. ("BP"). Plaintiffs allege that the contamination occurred sometime between September 1, 1971, and August 31, 1981, during the time BP operated a gas station on property that is adjacent to the property now owned by the plaintiffs.

{¶ 2}   In November 1996, plaintiffs filed a complaint against BP, bringing claims of nuisance, negligence, trespass, and strict liability.   However, they voluntarily dismissed that complaint in October 1999, after the trial court refused to grant summary judgment in favor of BP. Plaintiffs refiled their complaint on October 6, 2000, and BP again moved for summary judgment.   Because the judge to whom plaintiffs' case had been originally assigned had retired, the case was assigned to another judge of the court.   After BP's motion had been fully briefed, the newly assigned judge granted BP summary judgment on each of the claims raised in the complaint.   Plaintiffs now appeal, raising the following two assignments of error:

{¶ 3}   I. "The trial court erred in granting defendant summary judgment in that a genuine issue of material fact exists regarding the issue of continuous trespass."

{¶ 4}   II. "The trial court erred in granting defendant summary judgment in that a genuine issue of material fact exists regarding plaintiff's [sic] claims for nuisance, negligence and strict liability."

{¶ 5}   The following material facts are not in dispute.   In 1971, the Toepfner Family Trust leased property located at 1540 West Mound Street in downtown Columbus to the Standard Oil Company.   Thereafter, Standard Oil, a predecessor to BP, constructed and operated a gas station and car wash on the property. BP later assumed the lease and operation of that facility.

{¶ 6}   On August 31, 1981, at the expiration of the lease, BP vacated the property and sold the structure, all of the equipment, and the underground petroleum storage tanks to the trust.   Pursuant to the purchase agreement, the trust bought the structure, equipment, and underground storage tanks "as is and

where is." The trust also released BP from any liability arising out of BP's operation of the gas station and underground storage tanks.

{¶ 7} At the time the trust retook possession of. the property, 1540 West Mound Street and 1516 West Mound Street were a single tax parcel with separate mailing addresses. However, in the spring of 1982, the property was subdivided into two tax parcels, and on June 14, 1982, the trust sold 1516 West Mound Street to plaintiff William Abraham and Donald Held. Thereafter, Held conveyed his interest in the property to plaintiff Dexter Yager Sr. Finally, on May 22, 1991, plaintiff William Abraham conveyed a portion of his interest in the property to plaintiff Dolores Abraham. Plaintiffs are the current owners of the property located at 1516 West Mound Street.

{¶ 8} On June 6, 1983, the trust removed the underground storage tanks that had been buried at 1540 West Mound Street. It then sold that parcel to Robert E. Dunn, who later sold the property to Donald and Tamara Cacchio. The Cacchios then sold the property to its current owners, Don and Jean Gilmore.

{¶ 9} In December 1992, the Gilmores discovered the presence of petroleum products in their soil. Because BP was the last entity to have operated the underground tanks, pursuant to R.C. 3737.87, BP was required to remove the contamination regardless of fault. BP began cleaning the 1540 West Mound Street property shortly thereafter. Approximately four years after remediation began, plaintiffs filed this action seeking monetary damages from BP, claiming that they had discovered petroleum contamination beneath the surface of their property at 1516 West Mound. As noted, plaintiffs' original action was voluntarily dismissed and refiled on October 6, 2000. On February 14, 2001, BP again moved for summary judgment, which was granted by the trial court on July 31, 2001.

{¶ 10} A motion for summary judgment allows a court to terminate litigation where a resolution of factual or legal disputes is unnecessary. When presented with an appeal from either the grant or denial of a Civ.R. 56 motion for summary judgment, this court applies the same standard applied by the trial court, considering the motion as if it had been presented to this court for the first time. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 671 N.E.2d 241.

{¶ 11} Under both the federal and Ohio Rules of Civil Procedure, in order to obtain summary judgment, a party must establish (1) that there is no genuine issue as to any material fact, (2) that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party, and (3) that the party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Specifically, Civ.R. 56(C) provides:

{¶ 12} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 13} In determining whether a genuine question of material fact exists, a court is obligated to view the evidence presented in the light most favorable to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. However, provided the moving party has satisfied the three-part inquiry set forth above, the nonmoving party is not permitted to rest upon the allegations or denials contained in his or her pleading but must come forth with specific facts or argument showing the existence of a genuine issue for trial. Civ.R. 56(E); *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, following *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. Having applied the law to the facts of record, for the reasons that follow, we conclude that the trial court correctly entered summary judgment in favor of BP.

{¶ 14} A trespass is an interference or invasion of a possessory interest in property. *Crown Prop. Dev., Inc. v. Omega Oil Co.* (1996), 113 Ohio App.3d 647, 681 N.E.2d 1343. A person or entity is liable to another for trespass if the person or entity intentionally enters upon land in the possession of another or causes a thing or third person to do so. *Baker v. Shymkiv* (1983), 6 Ohio St.3d 151, 6 OBR 206, 451 N.E.2d 811. Thus, in order to set forth a prima facie case of trespass to real property, a plaintiff must demonstrate an unauthorized and intentional act, and entry onto the land in possession or control of another. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153.

{¶ 15} To recover on a claim of trespass, a plaintiff must prove that he or she had actual or constructive possession of the land at the time the trespass occurred. *Rowland v. Rowland* (1837), 8 Ohio 40, 1837 WL 5. See, also, *Northfield Park Assoc. v. Northeast Ohio Harness* (1987), 36 Ohio App.3d 14, 521 N.E.2d 466; and *Williams v. Pomeroy Coal Co.* (1882), 37 Ohio St. 583, 1882 WL 23. Indeed, this court has recognized that "[i]mplicit in an action in trespass is the notion that plaintiffs were either actually or constructively in possession." *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.* (1987), 38 Ohio App.3d 79, 81, 526 N.E.2d 321.

{¶ 16} In this case it is undisputed that BP vacated the premises on August 31, 1981, and did not return. Therefore, it seems clear that any alleged tortious conduct by BP would have occurred and ended no later than August 1981 when

BP made the transfer to the trust. It is also undisputed that plaintiffs purchased the adjacent property in June 1982. Thus, BP ceased operating the gas station and vacated the land, selling all of the improvements and storage tanks to the trust, prior to plaintiffs' acquisition of the adjacent property.

{¶ 17}  Recognizing that they were not in possession of 1516 West Mound at any time that BP was in possession of the adjacent property, plaintiffs argue that BP's alleged tortious activity constitutes a continuing trespass. A quasi-exception to the contemporaneous-possession rule occurs when the defendant's trespass, although set in motion prior to the plaintiff's possession of the land, continues after the plaintiff takes possession. Stated alternatively, a plaintiff may sue for trespass even though the trespass began prior to the plaintiff's taking possession, if the defendant's trespass continues after the plaintiff takes possession.

{¶ 18}  Plaintiffs argue that the question of whether a trespass of underground contaminants is continuous or permanent is always a question of fact and, therefore, not appropriately decided in the context of a motion for summary judgment. In *Valley Ry. Co. v. Franz* (1885), 43 Ohio St. 623, 4 N.E. 88, the Ohio Supreme Court dealt with a case of a continuing trespass to land. In that case, the defendant purposefully diverted the course of a stream that ran across his property, turning the stream so that it ran over the plaintiff's property, causing erosion of the plaintiff's land. The court determined that the defendant's trespass was continuing, explaining:

{¶ 19}  "When a man commits an act of trespass upon another's land, and thereby injures such other at once and to the full extent that such act will ever injure him, he is liable at once for this one act and all its effects; and the time of the statute of limitations runs from the time of such act of trespass. To this extent only is the case of *Kansas Pac. Ry. Co. v. Mihlman,* 17 Kan. 224 [1876 WL 947], cited here; as the court found that the trespass upon complainant's land was a single completed act. And the same is true of the case of *Williams v. Pomeroy Coal Co.,* 37 Ohio St. 583 [1882 WL 23].

{¶ 20}  "But where the act of trespass is a permanent trespass, as the erection of buttresses to support a turnpike road (as in *Holmes v. Wilson,* 10 Ad. & El. 503), or the erection and maintenance of a permanent building (as in *Thompson v. Gibson,* 7 M. & W. 456), it may be said to be a continuing trespass or nuisance, for which a cause of action accrues and may be brought at any time until, by adverse use or possession, the trespasser has enforced an adverse claim that has ripened and has become a presumptive right or a valid estate. * * *

{¶ 21}  "* * *

{¶ 22} "* * * [W]hen the owner of land rightly and lawfully does an act entirely on his own land, and by means of such act puts in action or directs a force against or upon, or that affects, another's land, without such other's consent or permission, such owner and actor is liable to such other for the damages thereby so caused the latter, and at once a cause of action accrues for such damages; and such force, if so continued, is continued by the act of such owner and actor, and it may be regarded as a continuing trespass or nuisance * * *.

{¶ 23} "* * *

{¶ 24} "The facts stated in the amended petition show that the Valley Railway Company diverted the stream, and turned its course and current against and over the lands of Franz, and thereby caused the injury complained of. *The company remained upon its own land, and cut the new channel, and took control of the stream, and directed its course when the same passed from its land and its control, and has ever since so controlled and directed the stream that has caused the damage complained of.* The amended petition states a cause of action that is not barred by the statute of limitations provided for such cases." (Emphasis added.) 43 Ohio St. at 625–628, 4 N.E. 88.

{¶ 25} Thus, a continuing trespass occurs where a defendant acts in a manner that results in recurring or new injuries to the plaintiff's property.

{¶ 26} In contrast to a continuing trespass, a permanent trespass occurs when the defendant has committed a finite tortious act. For example, in *Williams,* supra, the defendant, while mining coal on leased property, inadvertently or negligently mined under adjoining property owned by a predecessor in interest to the plaintiff. After all of the coal had been removed from its property, the defendant vacated the land, and returned possession and control to the owner. Approximately two years later, the plaintiff bought the adjoining piece of property and began operating his own mine. However, while the plaintiff operated his mine, the mine abandoned by the defendant filled with water. In June 1968, plaintiff broke through into the portion of the defendant's mine located on the plaintiff's property. When he did so, plaintiff's mine was flooded. The Ohio Supreme Court concluded that the plaintiff had no right of recovery because the trespass was complete when the defendant vacated its mine, and because the plaintiff did not own the land to which the injury was done at the time of the trespass.

{¶ 27} Our review of the case law, including, but certainly not limited to, the cases set forth above, leads this court to conclude that there is a distinction between continuing tortious conduct and continuing damage. Irrespective of damage, a continuing trespass occurs when there is some continuing or ongoing tortious activity attributable to the defendant. Conversely, a permanent trespass

occurs when the defendant's tortious act has been fully accomplished. Thus, the determinative question centers upon the nature of the defendant's tortious conduct, not upon the nature of the damage caused by that conduct.

{¶ 28} Although it could be argued that the defendant engaged in an ongoing course of tortious conduct while it was in possession and control of 1540 West Mound Street, in this case, defendant's tortious activity, if any, stopped on August 31, 1981, when it vacated the leased premises and returned possession and control of the property to the trust. Thus, even though the damage from the original violation or violations may persist, as of August 31, 1981, the escape of petroleum products from 1540 West Mound was no longer continued by any act of the defendant. See *Valley Ry. Co.*, supra, 43 Ohio St. at 627, 4 N.E. 88. Accordingly, plaintiffs' first assignment of error is overruled.

{¶ 29} In their second assignment of error, plaintiffs contend that the trial court incorrectly found there to be no issue of fact regarding their claims for nuisance, negligence, and strict liability.

{¶ 30} A private nuisance is an act that wrongfully interferes with another's interest, use, or enjoyment of land. *Brown*, supra. It can also be anything that obstructs the reasonable and comfortable use of property. *Harris v. Findlay* (1938), 59 Ohio App. 375, 13 O.O. 172, 18 N.E.2d 413. However, as the defendant correctly states, it involves conflicts between "neighboring, contemporaneous land uses." *Wellesley Hills Realty Trust v. Mobil Oil Corp.* (D.Mass. 1990), 747 F.Supp. 93, 98. See, also, *Philadelphia Elec. Co. v. Hercules, Inc.* (C.A.3, 1985), 762 F.2d 303. Accordingly, the trial court correctly granted summary judgment to the defendant on plaintiffs' claim for nuisance.

{¶ 31} Plaintiffs also cursorily argue that the trial court incorrectly granted summary judgment on their claims for negligence and strict liability. To establish a prima facie case of negligence, plaintiffs must show that the defendant owed them a duty, that it breached that duty, and that the breach caused them damage. On the other hand, when determining whether an activity constitutes an ultrahazardous activity so as to impose strict liability, the court considers the following: the existence of a high degree of risk of harm, the likelihood that great harm will occur, the inability to eliminate the risk of harm through the exercise of ordinary care, how common or uncommon the activity is, whether the activity is appropriately conducted in the location where it is found, and the extent to which the activity's value outweighs the dangerous nature of the activity. *Crawford v. National Lead Co.* (1989), 784 F.Supp. 439.

{¶ 32} In this case, the trial court concluded that the plaintiffs had failed to come forward with any persuasive authority supporting their claim that the defendant owed them a duty of care. It also found no authority for plaintiffs'

proposition that a landowner can be held strictly liable to future adjoining landowners for activities conducted on their property.

{¶ 33} The burden of affirmatively demonstrating error on appeal rests with the plaintiffs. App.R. 9 and 16(A)(7), and *State ex rel. Fulton v. Halliday* (1944), 142 Ohio St. 548, 27 O.O. 487, 53 N.E.2d 521. Pursuant to App.R. 16(A)(7), plaintiffs must present their contentions with respect to each assignment of error presented for review and the reasons in support of the contentions with citations to the authorities, statutes, and parts of the record on which they rely. It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error. *Slyder v. Slyder* (Dec. 29, 1993), Summit App. No. 16224, 1993 WL 548760.

{¶ 34} Upon review, we find no support for plaintiffs' claims of negligence or strict liability. Having applied the relevant law to the facts of this case, we conclude that summary judgment in favor of the defendant was appropriate. Plaintiffs' second assignment of error is therefore overruled.

{¶ 35} For the foregoing reasons, both of plaintiffs' assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

BOWMAN and LAZARUS, JJ., concur.